IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAMUEL JAMES, on behalf of
himself and all others
similarly situated,

    *Plaintiff*,

v.                          Case No.: 1:20cv215-MW/GRJ

CIRCLE K STORES INC.,

    *Defendant.*
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS AS MOOT, AND DISMISSING CASE

This case concerns an alleged violation of the Fair Credit Reporting Act ("FCRA"), and the disposition of this motion turns on whether Plaintiff has Article III standing. As indicated by recent Eleventh Circuit decisions, the standing issue in this case is not easy. Nonetheless, applying the Eleventh Circuit's guidance on this issue, this Court finds Plaintiff cannot demonstrate a concrete injury and, therefore, lacks standing. Defendant's Motion for Summary Judgment, ECF No. 55, is **GRANTED**.[1]

---

[1] This Court has considered all the papers submitted by the parties. ECF Nos. 55, 62, 64, 68, 70, 71, 73, 75 & 77, and all attached exhibits.

# I. Background

As it must, this Court views the facts in the light most favorable to Plaintiff, the non-movant. Plaintiff claims Defendant violated the FCRA, 15 U.S.C. §§ 1681b(b)(2)(A)(i) & 1681b(b)(2)(A)(ii), by procuring a consumer report on Plaintiff (and other putative class members) for employment purposes without first providing him a lawful disclosure and without his lawful authorization.[2]

Plaintiff Samuel James applied for employment with Defendant Circle K Stores, Inc. ("Circle K") in October 2018. ECF No. 1 ¶ 22. Plaintiff alleges that the "Disclosure and Authorization" provided in the employment package did not comply with FCRA requirements. *Id.* ¶¶ 24-27. As a result, Plaintiff alleges he was confused and mistakenly authorized Defendant to procure "the wholesale release of his personal, private, and sensitive information, including medical information." *Id.* ¶ 35.

---

[2] The FCRA states in relevant part that:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Notably, Defendant did not procure Plaintiff's medical or credit history, but did procure his criminal history and social security number. *See* ECF No. 71 at 2; ECF No. 55 at 4. Defendant, relying on Plaintiff's deposition, argues that Plaintiff would have authorized the procurement of all his information regardless of the confusion. Plaintiff maintains that he would not have authorized a background check permitting Defendant access to his medical records and credit history. Viewing the record in the light most favorable to Plaintiff, the facts show that Plaintiff would have authorized Defendant to procure his criminal history and social security number, but he would not have authorized Defendant to procure his medical or credit history. But this Court need not resolve whether Plaintiff's testimony is contradictory. As explained below, even if Plaintiff would not have authorized the procurement of his medical and credit history absent a confusing authorization form, Plaintiff still lacks standing.

## II. Legal Standard for Standing

Standing requires a plaintiff to show "injury in fact, causation, and redressability," and a plaintiff's failure to show any of these three elements cannot survive a motion for summary judgment. *I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014). Only the first element of standing—injury in fact—is at issue in this case.

To adequately assert an injury in fact a plaintiff must allege " 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical.' " *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1345 (11th Cir. Apr. 21, 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

A plaintiff can satisfy the concreteness requirement in one of three ways. Namely, by showing a tangible harm, a "risk of real harm," or "a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury." *Id.* at 1346 (citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926-927 (11th Cir. 2020) (en banc); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

### III. Plaintiff's Standing

Here, Plaintiff has not argued that any actual, tangible harm arose from Defendant's FCRA violation—no "physical injury, financial loss, or emotional distress." *Hunstein*, 994 F.3d at 1346. Nor does Plaintiff show a "risk of real harm" as there is no "threatened injury" in Plaintiff's complaint that can be characterized as "certainly impending."[3] *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)); *see also Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1003 (11th Cir. 2020) ("By contrast, this Court has rejected claims of Article III standing where the plaintiff's risk of harm had dissipated before the complaint was filed."). Thus, as in *Hunstein*, this Court must consider whether Plaintiff can show Article III

---

[3] This Court understands the facts to imply, at least, that Defendant will not in the future procure or attempt to procure Plaintiff's medical or credit history based on the non-compliant disclosure at issue.

4

standing through "a statutory violation that gives rise to an intangible-but-nonetheless-concrete injury." *Hunstein*, 994 F.3d at 1346.

A purely statutory violation does not inherently establish injury in fact. *Muransky*, 979 F.3d at 920.[4] "*Spokeo* instructs that in determining whether a statutory violation confers Article III standing, we should consider 'history and the judgment of Congress.' "[5] *Hunstein*, 994 F.3d at 1346-47. This Court considers the history first and the judgment of Congress next.

---

[4] While this Court may agree with Judge Jordan's thoughtful dissent, *Muransky*, 969 F.3d at 957, that dissent is not the law in the Eleventh Circuit. *See also Sierra v. City of Hallandale Beach, Fla.*, No. 19-13694, 2021 WL 1799848, at *14 (11th Cir. May 6, 2021) (Newsom, J., concurring) ("My colleague Judge Jordan has observed that because current standing doctrine lacks any solid anchor in text and history, it has devolved into "essentially a policy question." *Muransky*, 979 F.3d at 957 (Jordan, J., dissenting). In retrospect, I agree with him.").

[5] The "history and the judgment of Congress" requirement raises more question than it answers. As Judge Newsom put it,

> "Just how closely analogous to a common-law tort must an alleged injury be in order to be "concrete"? Just how old must a common-law tort be in order to qualify as having been "traditionally . . . regarded as providing a basis for a lawsuit in English or American courts"? And just what does the "judgment of Congress" have to do with the concreteness, realness, or actual existence of an injury?"

*Sierra*, 2021 WL 1799848, at *9 (Newsom, J., concurring). Moreover, the process of choosing a common law cause of action to compare to the harm prevented by a modern statute seems to be an odd process and, depending on which tort a court chooses for its comparison, can lead to the court arriving at different results. For example, the statutory provision at issue here can reasonably be characterized as analogous to invasion of privacy or even as negligent misrepresentation. If this Court were to choose invasion of privacy as the analogous tort, then the statutory provision could grant standing upon a showing that the right of privacy was invaded. *See Hunstein,* 994 F.3d at 1347-48. On the other hand, if this Court were to choose negligent misrepresentation or even intentional misrepresentation, then it is likely that a mere violation of the statute without any actual damages caused by the violation would not confer standing on Plaintiff. *See Trichell*, 964 F.3d at 998 (11th Cir. 2020).

A. History

A court "can discern a concrete injury where 'intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.' " *Hunstein*, 994 F.3d at 1347 (citing *Spokeo*, 136 S. Ct. at 1549). In other words, this Court should consider "whether the statutory violation at issue led to a type of harm that has historically been recognized as actionable." *Id.* (citing *Muransky*, 979 F.3d at 926).

When faced with violations of similar statutes, the Eleventh Circuit has analogized to the invasion of privacy family of torts. *Hunstein*, 994 F.3d at 1347 (citing 15 U.S.C. § 1692c(b), Fair Debt Collection Practices Act) and *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017) (citing 18 U.S.C. § 2710, Video Privacy Protection Act). At their core, the three statutes—the FDCPA, the VPPA, and the FCRA—protect private information. And while the Eleventh Circuit has not analogized the FCRA to a privacy tort, the Ninth Circuit has, specifically explaining that the FCRA's authorization requirement under 15 U.S.C. § 1681b(b)(2)(A)(ii) "creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 491 (9th Cir. 2019) (quoting *Syed v. M-I, LLC*, 853 F.3d 492, 499-500 (9th Cir. 2017)). To be certain, this Court is not bound by the

Ninth Circuit's analysis of the FCRA provision at issue here and its close relationship to an intrusion upon seclusion. This Court does, however, find the Ninth Circuit's reasoning persuasive and, therefore, finds that the FCRA provision at issue has a close relationship to a harm protected against by the privacy tort of intrusion upon seclusion.

The next question is whether intrusion upon seclusion is a tort that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. According to the Eleventh Circuit, the answer is yes. *Hunstein*, 994 F.3d at 1348 (finding that invasion of privacy "bears 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in the English or American courts' " (citing *Spokeo*, 136 S. Ct. at 1549)); *Perry*, 854 F.3d at 1341 (specifying that under "the tort of intrusion upon seclusion, '[t]he *intrusion itself* makes the defendant subject to liability, even though there is no publication or other use,' meaning a showing of additional harm is not necessary to create liability" (citing Restatement (Second) of Torts § 652B cmt. b (emphasis added)).

But it is not enough that the harms match in the abstract; this Court must look to the harm Plaintiff actually suffered *in this case*—i.e., the harm produced by "the statutory violation at issue," *Muransky*, 979 F.3d at 926. The statutory violation at issue here resulted in the "harm" of Defendant obtaining information about Plaintiff that Plaintiff did not object to Defendant procuring. Any harm in this case would

have occurred only if Defendant had actually intruded upon Plaintiff's seclusion; that is, if Defendant had procured the information Plaintiff objected to Defendant procuring; namely, his medical and credit history. Because the harm of *this* statutory violation is not comparable to the harm of intrusion upon seclusion, this analysis of history and harm supports the conclusion that Plaintiff does not demonstrate injury in fact and lacks Article III standing. Having determined that the harms do not match, this Court turns to Congress's judgment.

## A. The Judgment of Congress

Next, considering the judgment of Congress—which is "instructive and important" as "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," *Spokeo*, 136 S. Ct. at 1549—*Hunstein* and *Perry* remain illuminating. "Congress, of course, expresses its 'judgment' in only one way—through the text of duly enacted statutes." *Hunstein*, 994 F.3d at 1348. In *Hunstein*, it was sufficient to the Eleventh Circuit that Congress included its "findings and declaration of purpose" in the FDCPA, stating that the statute was directed against the harm of the "invasion[] of individual privacy." *Id.* (citing 15 U.S.C. § 1692(a)). The court in *Perry* was less explicit in analyzing the judgment of Congress, but still determined that the VPPA "seeks 'to preserve personal privacy . . . .'" *Perry*, 854 F.3d at 1340 (citations omitted).

Here, Congress passed the FCRA with four specific findings serving as its introduction, the fourth of which states that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4); *see also Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Congress intended the FCRA to have the effect of ensuring that consumer reporting agencies (and, as relevant here, those entities that procure background reports from such agencies) respect consumers' rights of privacy. This expression of congressional judgment aligns with the historical analysis and leads to a shared conclusion; namely, that the FCRA was passed to protect individuals from having their privacy intruded upon.

Here, again, Plaintiff's seclusion was not intruded upon. Defendant only ever procured the information that Plaintiff would have authorized. So, as with the historical analysis, considering Congressional judgment does not lead to divining Plaintiff's standing in this case.[6]

### IV. Conclusion

For the reasons stated, accepting the facts in the light most favorable to Plaintiff, Plaintiff has not demonstrated an injury in fact to satisfy the disputed issue of standing. Accordingly, Defendant's Motion for Summary Judgment, ECF No. 55,

---

[6] Naturally, just because this Court does not find Plaintiff demonstrated standing under these facts does not indicate that another Plaintiff could not demonstrate standing based on a statutory violation of the FCRA under another set of facts.

is **GRANTED**. Plaintiff's Motion to Certify Class, ECF No. 58, is **DENIED as moot**. The Clerk is directed to enter judgment stating, "Plaintiff's claims are **DISMISSED** for lack of standing." The Clerk shall close the file.

**SO ORDERED on May 20, 2021.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**